THE PERTH AMBOY TERRA COTTA COMPANY, DEFEND-
ANT IN ERROR, v. PATRICK L. RYAN, PLAINTIFF IN
ERROR.

Submitted July 5, 1902—Decided November 10, 1902.

A right of way had been granted to Alfred, Edward and Eber Hall
and their assigns by the deed of one Coddington, the predecessor
in title of the defendant. The right of way had been granted for
the purpose of enabling the Halls to cart clay, &c., from their
clay-banks (a tract of twenty-one and one-half acres) to a certain
public road. The grant provided that when the road was no
longer required by the Halls, their heirs and assigns, it should
revert to Coddington, his heirs and assigns. In a suit by the
assigns of the Halls against the defendant for damages for ob-
structing the way—*Held*—
(1) That this was not a way of necessity : the right granted did
not become extinct because the Halls or their assigns, subsequent
to the grant, acquired another way of carting clay from these
clay-banks to some other road.
(2) The right granted did not become extinct by mere non-user.
(3) The right of way was assignable.
(4) It was not limited to carting clay from pits opened at the
time of the grant, but extended to all clay-banks upon the tract
of twenty-one and one-half acres.

On error to the Middlesex Circuit Court.

Before GUMMERE, CHIEF JUSTICE, and Justices VAN SYCKEL,
FORT and GARRETSON.

For the plaintiff in error, *Ephraim Cutter.*

For the defendant in error, *James S. Wight.*

The opinion of the court was delivered by

GARRETSON, J. By deed dated September 26th, 1853, the
executors of the estate of Ephraim Harriott, deceased, con-
veyed to Alfred Hall, Edward J. Hall and Eber Hall, in fee,
a tract of land containing twenty-one and a half acres. On
the 15th day of July, 1854, Robert Coddington, as party of

the first part, and the said Alfred Hall, Edward J. Hall and
Eber H. Hall, of the second part, entered into articles of
agreement, which were signed by both parties and duly ac-
knowledged and recorded, for the consideration of $1, and for
the further sum of $300, to be paid in equal $50 installments,
whereby the said Coddington did "thereby for himself, his
heirs, executors and administrators, covenant, grant, promise
and agree to and with the said parties of the second part, their
heirs and assigns, that they, the said parties of the second
part, their heirs and assigns, shall and may at all times here-
after have free outlet and right of way by the private road
hereinafter described, leading from the clay-banks purchased
of the estate of Ephraim Harriott, deceased, by them, situate
in the township of Woodbridge aforesaid, through the prem-
ises of the said Robert Coddington, to the old stage road lead-
ing from Woodbridge to Piscataway, for the purpose of cart-
ing clay, sand or other articles from the said clay-banks used
in the manufactory of the said parties of the second part at
Perth Amboy, or by them disposed of at private sale or other-
wise, with free liberty to enter, pass and repass with teams
and drivers, and other persons employed by them, subject to
the following conditions"—the conditions are that the road
is to be strictly a private road, to be used by the parties of
the second part, their heirs and assigns, for the foregoing
purposes, reserving to Coddington or his assigns the right of
way with his teams, drivers and persons employed by him to
travel and cart on the said private road, and in all other
respects to be used by and vested in the said parties of the
second part, their heirs and assigns. Coddington agreed to
keep up a gate at the outlet of the road on the west side of
the old stage road; the Halls agreed to keep the road in good
order for the purposes for which it was granted, and to keep
up a gate at the commencement of the road and to be respon-
sible for all damage to the lands of Coddington for want of
closing the gates by them or their employes, "and also, that
when the said road is no longer required by the said parties
of the second part, their heirs and assigns, then the said road
to revert to the said Robert Coddington, his heirs and assigns,

the same as if this agreement had never been made." The agreement also contained provision as to how the consideration should be paid, and described the beginning and ending points of the road and its direction by courses and distances, and its width. The road did not begin at any part of the twenty-one and a half acre tract.

The Halls, by deed dated February 18th, 1880, conveyed the twenty-one and a half acres to the plaintiff, and by deed dated February 18th, 1883, conveyed to it the right of way. The title to the Coddington tract had become vested in the defendant in April, 1899.

The action was brought to determine the right of the plaintiff to use this private way, which had been obstructed by the defendant. The case was tried by the judge, without a jury, and judgment given for the plaintiff.

It appears from the evidence that in 1866 the Halls had purchased a piece of land lying between the twenty-one and a half acre tract and a public highway other than that to which the right of way granted led, and that for some years prior to that purchase, and afterwards, they and the plaintiff had obtained ingress to and egress from the twenty-one and a half acre tract across these lands, and the defendant claims that, another means of access to the twenty-one and a half acre tract existing, there no longer remains any necessity for the right of way which had been granted, and that it ceased by reason of the clause in the agreement "that when the road is no longer required by the said parties of the second part, their heirs and assigns, then the said road to revert to the said Robert Coddington, his heirs and assigns, the same as if this agreement had never been made."

The first assignment of error is that the court below decided "that the right of way mentioned in the declaration, granted by Robert Coddington over his lands, was not one of necessity, under the terms of the grant, and did not terminate when the grantees of said right of way acquired other lands adjoining a public highway and also adjoining the lands on which their clay-banks were located." In this we think there

was no error. It was not a way from necessity. It did not arise, nor was it granted, because the grantor of the clay-banks had so granted them that there was no other way of reaching them except through other lands of the same grantor. The lands of C could not be subjected to a way from necessity because of the situation of lands granted by A to B.

The right of way from the Halls' clay-bank to the old stage road leading from Woodbridge to Piscataway over the Coddington land was granted to the Halls, their heirs and assigns, for the purpose of carting clay, &c., and under this agreement, so long as they desire to use this private way to reach the old stage road for the purpose of carting clay, &c., as specified in the agreement, they have a right to do so, and are not in any way limited in that right because they have acquired another way of carting clay from their clay-banks to some other road. The language used in the agreement "that when the road is no longer required by the said parties of the second part, their heirs and assigns, then the said road to revert," &c., did create a way from necessity, and can only mean that when the Halls and their assigns cease to take clay from these clay-banks and no longer use the private road to cart clay from the clay-banks to the old stage road, and by some act or acts on their part and so intended by them, relinquish the right to use this road, then it is to revert.

The mere non-user of the way by the grantees, no matter how long continued, unless that non-user arose from the adverse possession of the way by the owners of the Coddington land for a period of twenty years, would not extinguish the right granted. The way was there for the Halls and their assigns to use, under the agreement, as they saw fit, at longer or shorter intervals.

This was a grant by Coddington of an interest in his lands to the Halls, their heirs and assigns, which might continue so long as the clay-bank continued to supply clay, which the owners of banks might desire to cart over this way to the old stage road, and it being granted to the Halls and their assigns it could be by them granted.

The grant, after reciting the purchase by the Halls from the estate of Harriott of a tract of land of twenty-one and a half acres, gave to the Halls a right of way "from the clay-banks purchased of the estate of Harriott" for the purpose of carting clay, &c., "from the said clay-banks."

This language indicates that the whole twenty-one and a half acres were included in the expression, "said clay-banks," and there is nothing in the agreement by which the right granted is limited to those clay-pits which were opened and used at the time of the execution of the grant.

We find no error in the ruling of the judge at the trial, and the judgment should be affirmed.