FLORA E. CLEAVES, ADMINISTRATRIX, ETC., OF DANIEL
  CLEAVES, DECEASED, APPELLANT, v. WILLIAM YES-
  KEL AND SAMUEL YESKEL, DOING BUSINESS AS YES-
  KEL SUPPLY COMPANY, RESPONDENT.

Submitted February 12, 1926—Decided May 17, 1926.

1. It was open to the jury to ascertain, from the facts presented,
   whether a course of business procedure by which the deceased
   was allowed by defendant's driver to occupy a place upon the
   car, as a method of assisting and directing him to the place of
   loading, had persisted for such a period as to justify the deceased
   in adopting the procedure upon the occasion of his injury—*Held*,
   to be a question for the determination of the jury whether such
   a settled practice was adopted by the servant of the defendant,
   in the pursuance of the orderly and expeditious transaction of
   the master's business, and with the master's implied consent, by
   one whose duty of supervision and direction of the business of
   the yard where the accident happened might reasonably be held
   to comprehend such a course of action.
2. Whether an act of a servant is or is not such as might reasonably
   be held to be within the employment's scope is ordinarily one of
   fact for the jury's determination, excepting where the departure
   from the master's business is of a marked and decided character,
   when the question may be within the province of the court to
   determine.

On appeal from the Supreme Court.

For the appellant, *Ralph O. Wilgers.*

For the respondent, *Mark Townsend, Jr.*

The opinion of the court was delivered by

MINTURN, J. Upon the opening statement of plaintiff's
counsel, outlining in general terms the plaintiff's cause of
action, the learned trial court, *ex mere motu,* directed a non-
suit, and from that determination this appeal was taken.

The plaintiff's decedent was killed by being run over by
the defendant's automobile, driven by its servant, in the yard
of the Balback Smelting and Refining Company, in Newark.

The dceased was associate superintendent of the lead department of the Balback company, and as such was in charge of the yard of the company, which duty included the direction and supervision of vehicles entering the grounds, for the purpose of transacting business there, and removing merchandise therefrom.  For the purpose of conducting and expediting the business, it had been the practice of the deceased to meet the defendant's automobile truck at or near the entrance, and take his stand upon the running board, and from there direct the movements of those in charge of the vehicle to the specific location, upon the grounds, where certain burlap bags and scrap burlap were awaiting removal by defendant.  On the 25th of July, 1924, the deceased, pursuing his accustomed practice, stepped upon the running board near the entrance of the plant, and while the vehicle was being operated and carrying him to the intended location, the running board of the truck being in a broken, unsafe and disordered condition, collapsed, threw the deceased under the running car, and injured him so seriously that he died therefrom immediately.    Not only was this statement of the plaintiff's cause of action before the learned trial court, but the complaint upon which it was founded, and which was a part of the record containing substantially the facts narrated, and presenting the plaintiff's cause of action, was also before the court.  The complaint was not demurred to, in any form, but was met with an answer by the defendant which thus created a triable issue of fact.

The learned trial court, however, pursued the course indicated upon the ground that there was, from the opening of counsel, an absence of invitation, express or implied, by the agent of the defendant driving the truck, and that the deceased therefore occupied the status of a licensee, or a trespasser, to whom the defendant owed no duty greater than the abstention from willful negligence.  We think the learned trial court erred in this conception of the situation.  There are, of course, cases where, as in *Karas v. Burns Bros.*, 94 *N. J. L.* 59, and *Zampella v. Fitzhenry*, 97 *Id.* 517, the line of demarcation is distinctly drawn between an unauthorized and

clearly arbitrary or individual act of the driver of a vehicle,
and therefore being *ab extra* his line of duty, and the scope
of his employment was held to take from him the legal status
of agency, so as to relieve the master from liability result-
ing from the well-settled doctrine involved in the applica-
tion of the maxim *respondeat superior*. But such, obviously,
was not the factual situation presented by the case at bar.
It was open to the jury to ascertain from the facts whether
a course of business procedure by which the deceased was
allowed by defendant's driver to occupy a place upon the
car, as a method of assisting and directing him to the place
of loading the burlap, had persisted for such a period as to
justify the deceased in adopting the procedure upon the
occasion of his injury. If such a settled practice had in this
wise obtained, a jury might reasonably infer that it was
adopted by the servant, in the pursuance of the orderly and
expeditious transaction of the master's business, and with
their implied assent by one whose duty of supervision and
direction of the business of the yard might reasonably be
held to comprehend such course of action. *Dierkes et ux.* v.
*Hauxhurst Land Co.,* 80 *N. J. L.* 369; 83 *Id.* 623; *Fletcher*
v. *Baltimore and Potomac Railroad,* 168 *U. S.* 134.

Thus, it is declared, as a fundamental principle of the law
of master and servant: "An agent may bind his principal
by any act within the scope of his authority, and that au-
thority may be implied from circumstantial evidence." 2
*Street Leg. Liab.* 448.

To the same effect is Blackstone "The master is answer-
able for the act of his servant, if done by his command, either
expressly given or implied, *nam qui facit per alium facit per
se.* In the same manner whatever a servant is permitted to
do in the usual course of his business is equivalent to a gen-
eral command." 1 *Com.* 429.

And so it has been declared quite generally that: "Acts
are authorized within the meaning of the law, where the
master commands the particular act in question, or where
the act is such as may be reasonably done, and is, in fact,
done in order to carry out the master's general instructions

or to accomplish a commanded act. A general command may be inferred from conduct or usage." *Street ubi sup.;* 18 *R. C. L.* 792, and cases cited.

Whether the act was or was not such as might reasonably be held to be within the employment's scope is ordinarily one of fact for the jury's determination, excepting where the departure from the master's business is of a marked and decided character when the question may be within the province of the court to determine. 18 *R. C. L.* 796, and cases cited; *Jennings* v. *Okin,* 88 *N. J. L.* 659; 39 *C. J.* 1284, and cases cited.

The result is, the judgment under review must be reversed.

*For affirmance*—None.

*For reversal*—TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, GARDNER, VAN BUSKIRK, MCGLENNON, KAYS, HETFIELD, JJ.   12.