VETO PALUMBO, ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF FILOMANA PALUMBO, DECEASED, PLAINTIFF, v. PENNSYLVANIA RAILROAD COMPANY, A CORPORATION; JOHN A. FORSTER, TRADING AS FORSGATE FARMS, AND MILTON OMAN, DEFENDANTS.

PETER CAGGIANO, ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF MARY CAGGIANO, DECEASED, PLAINTIFF, v. PENNSYLVANIA RAILROAD COMPANY, A CORPORATION; JOHN A. FORSTER, TRADING AS FORSGATE FARMS, AND MILTON OMAN, DEFENDANTS.

JOHN DI MASSIMO, ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF FRANK DI MASSIMO, DECEASED, PLAINTIFF, v. PENNSYLVANIA RAILROAD COMPANY, A CORPORATION; JOHN A. FORSTER, TRADING AS FORSGATE FARMS, AND MILTON OMAN, DEFENDANTS.

JOSEPH GEORGE, Jr., BY JOSEPH GEORGE, Sr., HIS NEXT FRIEND, AND JOSEPH GEORGE, Sr., INDIVIDUALLY, PLAINTIFFS, v. PENNSYLVANIA RAILROAD COMPANY, A CORPORATION; JOHN A. FORSTER, TRADING AS FORSGATE FARMS, AND MILTON OMAN, DEFENDANTS.

MARY GEORGE AND JOSEPH GEORGE, Sr., PLAINTIFFS, v. PENNSYLVANIA RAILROAD COMPANY, A CORPORA- TION; JOHN A. FORSTER, TRADING AS FORSGATE FARMS, AND MILTON OMAN, DEFENDANTS.

ROSE PALUMBO AND MARY PALUMBO, BY THEIR NEXT FRIEND, VETO PALUMBO, AND VETO PALUMBO, INDIVIDUALLY, PLAINTIFFS,' v. PENNSYLVANIA RAILROAD COMPANY, A CORPORATION; JOHN A FORSTER, TRADING AS FORSGATE FARMS, AND MILTON OMAN, DEFENDANTS.

SAMUEL GEORGE AND SARAH GEORGE, BY THEIR NEXT FRIEND, JOSEPH GEORGE, SR., AND JOSEPH GEORGE, SR., INDIVIDUALLY, PLAINTIFFS, v. PENNSYLVANIA RAILROAD COMPANY, A CORPORATION; JOHN A. FORSTER, TRADING AS FORSGATE FARMS, AND MILTON OMAN, DEFENDANTS.

Decided February 1, 1932.

CLEARY, C. C. J.   The above cases, seven in number, were tried at the Middlesex County Circuit, commencing on April 27th, 1931, and ending on May 5th, 1931. The cases although each was separate and distinct from the other, were tried together, because of the fact that each arose out of the same accident and in each case the same defendants were named. and servant of the defendant Forsgate Farms. As the truck,

The accident out of which these causes arose occurred about five-thirty P. M. on the 28th day of August, 1929, at a crossing of the defendant Pennsylvania Railroad Company, where it crossed a public highway known as Buckalew avenue,

in the borough of Jamesburg, Middlesex county. On the day in question the plaintiffs had been working for the defendant Forsgate Farms and were returning to their homes in a truck belonging to that defendant, which truck was being driven by the other defendant Oman, who was admittedly the agent in which the plaintiffs were riding, was attempting to cross at the intersection it was struck by a train of the Pennsylvania Railroad Company, and as a result of this collision, three of the passengers in the truck were killed and four others were injured. Some of the injured plaintiffs were minors, and in such cases the actions were brought by their fathers as next friend and individually. The trial resulted in a verdict in favor of the plaintiffs in each case and against all three defendants, and the amount returned in each case was as follows: in favor of the plaintiff, Veto Palumbo, administrator *ad prosequendum* of Filomana Palumbo, deceased, and against all the defendants for $15,000; in favor of the plaintiff, Peter Caggiano, administrator *ad prosequendum* of the estate of Mary Caggiano, deceased, and against all the defendants for $15,000; in favor of the plaintiff, John Di Massimo, administrator *ad prosequendum* of the estate of Frank Di Massimo, deceased, and against all the defendants for $6,000; in favor of the plaintiff, Joseph George, Jr., by Joseph George, Sr., his next friend and against all the defendants for $10,000; in favor of the plaintiff, Joseph George, Sr., and against all the defendants for $100; in favor of the plaintiff, Mary George and against all the defendants for $2,000, and in favor of the plaintiff, Joseph George, Sr., and against all the defendants for $500; in favor of Rose Palumbo, by her next friend, Veto Palumbo, and against all the defendants for $500, and in favor of the plaintiff, Veto Palumbo, and against all the defendants for $200; in favor of plaintiff, Mary Palumbo, by her next friend, Veto Palumbo, and against all the defendants for $500, and in favor of the plaintiff, Veto Palumbo, and against all the defendants for $75; in favor of the plaintiff, Samuel George, by his next friend, Joseph George, Sr., and against.

all the defendants for $250, and in favor of the plaintiff, Joseph George, Sr., and against all the defendants for $50; in favor of the plaintiff, Sarah George, by her next friend, Joseph George, Sr., and against all the defendants for $50 and in favor of the plaintiff, Joseph George, Sr., and against all the defendants for $10.

Rules to show cause were obtained by each of the defendants in each separate case and the reasons assigned were the same in each case. For the defendant Pennsylvania Railroad Company, they were as follows:

1. Because the verdict is against the weight of evidence as to any negligence on the part of the defendant the Pennsylvania Railroad Company.

2. Because the verdict is clearly against the weight of evidence as to any inference of negligence on the part of the defendant the Pennsylvania Railroad Company.

3. Because the preponderance of evidence did not show negligence on the part of the defendant, and to find the defendant guilty of negligence, not an inference of negligence, must be proven.

4. Because the only claim of negligence against the defendant was that while the statutory signal, by blowing the whistle of the locomotive which struck the truck, was given and blown, it was not blown nine hundred feet from the crossing, at which the accident happened, but the blowing of the whistle, by the clear weight and preponderance of the evidence, was shown to have been at least nine hundred feet from the crossing when the whistle was first blown, and not four hundred and sixty feet from the crossing, as claimed by the plaintiff.

5. Because the blowing of the whistle of the locomotive four hundred and sixty feet from the crossing where the accident happened, and not nine hundred feet from such crossing, was not the proximate cause of the happening of the accident.

6. Because the jury did not give proper consideration to the number, character and appearance of the great majority of the witnesses who swore that the whistle was blown

at least nine hundred feet from the crossing where such accident happened.

7. Because the damages awarded, to wit., $15,000, are very excessive, and out of all proportion, to the pecuniary loss sustained by the plaintiff.

For the other two defendants they were as follows:

1. That the verdicts were against the clear weight of the evidence.

2. That the negligence of the railroad company was the proximate cause of the accident.

3. That the verdicts were excessive.

Although one of the reasons assigned in each case was that the verdicts were excessive, it was agreed by counsel for each defendant, that in any case where the amount of the verdict did not exceed two hundred dollars that such reason as to excessiveness would not be urged.

The reasons advanced by each defendant as to why the verdicts should be set aside are practically the same and may be grouped into two classes, first that the verdict against each defendant was against the weight of the evidence as to negligence and secondly that the verdicts are excessive. The defendant Pennsylvania Railroad Company further contends that it was not guilty of any negligence, and that even if it was, that such negligence was not the proximate cause of the accident.

The accident occurred about five-thirty in the afternoon. It was still bright, and according to the testimony of the defendant Oman himself, as he approached the crossing he looked and saw no train coming from either direction. He further testified that he could see in the direction from which the train was coming, for a distance of about one thousand one hundred feet. When he was within forty feet of the track there was nothing to obstruct the view of the driver for this distance. He testified that when he first saw the train the front of his truck was over the second rail. It was the duty of the driver of this truck to use reasonable care to protect plaintiffs, and to not only look, but look effectively, as he approached this place of known danger, and under the

circumstances, it being still daylight and the weather clear, whether or not he used that care was purely a question for the jury. By its verdict, the jury decided that he did not, and such a verdict was clearly justified by the evidence in the case. As to the defendant, Oman, and of course as to his principal, Forsgate Farms, there is nothing in the case to justify a finding that the verdict was against the weight of the evidence.

The negligence charged against the defendant railroad is that it failed to give the signals as required by the statute and that this failure was one of the proximate causes of the accident. There was a conflict of testimony on this point, and upon that question alone, the case was submitted to the jury, with a specific charge by the court that if the jury found that if the signals were given as required by the statute, that then the defendant railroad could not be held responsible.

The law requires that a whistle be sounded at intervals, or a bell of specified weight be rung at a distance of three hundred yards from the crossing and continuing until the crossing is reached. *Comp. Stat.* 1910, *p.* 4236.

There were a great many witnesses produced upon this question, some seven or eight for the plaintiffs, other than the plaintiffs themselves, saying that it was not given within the prescribed area, and a great many, some sixty or more in number, testifying for the defendant railroad as to where they heard the signal. Most of the defendant's witnesses were unable to designate with any degree of certainty where the signal was first given, the enginer saying it was at the whistle post, others fixing some other place from which it could be inferred that it was given near the whistle post, while a great many others were of no help in fixing definitely where the point was, and from whose testimony it could be gathered that the plaintiffs' story was the correct version of what occurred. There was much confusion on this point, so much so, that after a careful reading of the whole testimony consisting of over eight hundred and fifty pages, and of more than one hundred and seventy pages of briefs submitted by counsel for the three defendants, which briefs consisted in

a large part of quotations from the testimony, that the court finds itself in the position where it cannot say that the jury was not justified in finding as it did.

It was a pure question of fact which the jury had to pass upon, and this court does not feel that the finding of the jury should be disturbed. To do so under this conflict in the testimony would be merely substituting the opinion of the court for that of the jury. This of course cannot be done. The grounds upon which a verdict should be set aside are stated in *Boesch* v. *Kick*, 97 *N. J. L.* 97, as follows:

"The ground upon which a verdict will be set aside as against the weight of evidence has been stated by this court many times, suffice it to say, it must be so clear as to give rise to an inference that the verdict was the result of mistake, passion or prejudice. It will not be set aside, although in the opinion of the court the jury might upon the evidence have found otherwise (*Queen* v. *Jennings*, 93 *N. J. L.* 353, or because the court if serving as a jury would have found differently. *Dickerson* v. *Payne*, 53 *Atl. Rep.* 699."

The weight of the testimony and the credibility of the witnesses are the determining factors for the jury. Of course the number of witnesses properly enter into the determination of the issue, but in many cases this of itself is not the only question. That is especially true in the present case, where even many of the witnesses for the defendant leave much doubt as to where the signals were actually given. If from the witnesses it could be found that the signals were not given until four hundred and fifty feet from the crossing, this of course would not be in compliance with the statute.

It is further argued by counsel for the railroad company that inasmuch as defendant Oman says he did not see the train, and from the way he drove upon the track, that it would not have made any difference even if the Pennsylvania Railroad Company had given the signals nine hundred feet away from the crossing, or at any other place, and that, therefore, the negligence of the railroad, if there was any, was not the proximate cause of the accident, but that it was Oman's negligence which was such proximate cause. There

would be merit in this argument if Oman was the plaintiff, but the question here is, as to what effect the failure to give the signals, had upon these plaintiffs. It may be that such signals if given might not have had any effect upon the defendant Oman, but it doesn't follow that the same would have been the result upon these plaintiffs. They had a right to have the signals properly given so as to give them the right to act for themselves under such conditions. If such signals were given and they could have protected themselves from injury, and the failure to properly give such signals prevented them from taking steps that they might otherwise have taken, the jury if it believed such to be the fact would have been justified in finding that the failure to give these signals was one of the proximate causes of the collision and subsequent injury to the plaintiffs. Under such circumstances, the negligence of all the defendants resulted in the injury to plaintiffs, and, while such negligence may have differed somewhat as to degree, neither of the defendants could escape responsibility for the entire damage.

Counsel for the defendant railroad further argues that as against mere negative testimony of the failure to give the signals, the positive testimony of their having been given, should control. We are in accord upon that abstract proposition, but from the testimony in this case, such a rule has no application. There was no negative testimony, as such, in this case. Every witness both for the plaintiff and defendants testified positively that the signals were given, but the question raised by such testimony was as to where they were given. It raises an entirely different situation from that found in *Holmes* v. *Pennsylvania Railroad Co.*, 74 *N. J. L.* 469, and other cases in which it has been held that a mere "I did not hear" is not sufficient as against the positive proof that they were given. In this case the witnesses were not only in a position to hear and to have their attention directed to the signal, but they actually heard them and testified positively that they were first given at a point, which if correct, would not be a compliance with the statute.

The only other question to be determined is as to the

excessiveness of the verdicts. There can be no question upon this ground except in the cases of John Di Massimo for $6,000, Peter Caggiano for $15,000, Veto Palumbo for $15,000, Joseph George, Jr., for $10,000 and Mary George for $2,000. The other verdicts are so small as require no comment. After carefully reading the testimony in the cases mentioned above, I have come to the conclusion that the verdicts for $15,000 in each case wherein a wife and mother was killed while quite high are not excessive. The same is true in the case of Mary George for $2,000. However, in the case of Joseph George, Jr., I have reached the conclusion that the verdict of $10,000 is excessive by at least $3,000, and in the case of John Di Massimo is excessive by at least $1,500. If the plaintiffs in these two cases will accept the sum of $7,000 in the Joseph George, Jr., case and $4,500 in the Di Massimo case, the rules to show cause will be discharged, otherwise they will be made absolute.

In all the other cases the rules to show cause obtained by each defendant are discharged, with costs.