CHARLES J. CRAWN, PLAINTIFF, v. JOHN YANAVOK AND CHARLES YANAVOK, DEFENDANTS.

Decided October 17, 1933.

For the rule, *King & Vogt* (*Harold A. Price.*)

Opposed, *Gebhardt & Gebhardt.*

LAWRENCE, C. C. J. The rule to show cause taken out in this case by defendants is made to rest upon the theory that the verdict of the jury was so manifestly the result of prejudice or partiality that it ought to be set aside. In other words, it is urged with considerable emphasis that the verdict should have gone for defendants instead of in favor of plaintiff, under the weight of the credible evidence on all the issues raised. On first impression, this would appear to be so, but a careful review of the record of the evidence received at the trial indicates that the rule applicable is that a verdict is not to be set aside where pure questions of fact are in con-

troversy, even though, in the opinion of the court, or if it had been serving as a jury, a different result might have been reached on the evidence; unless it gives rise to the inference, under the clearly apparent weight of the credible evidence, that the verdict was the result of mistake, passion, prejudice or partiality. *Boesch* v. *Kick,* 97 *N. J. L.* 92, 97; 116 *Atl. Rep.* 799; *Palumbo* v. *Pennsylvania Railroad Co.,* 10 *N. J. Mis. R.* 204, 210; 159 *Atl. Rep.* 322.

The circumstances, out of which the litigation arose, were that on February 29th, 1932, plaintiff was employed as a laborer, and had been for three or four months, with others by the state highway department, in excavating dirt and rock from an embankment along route No. 31. When ready for carting, the material would be loaded on trucks (engaged of the owners who operated them either themselves or with their own employes as drivers) to which were attached by chain or cable drags upon which the rock was placed. They would then be moved to the highway and so over it about one thousand feet to a place where a fill was being made and there dumped. Three or four of the men would accompany each truck to see that the material did not fall from it or the drag, and to assist in unloading at the fill. If any of the material did fall upon the highway, the truck was stopped and it was gathered by the men and replaced, so keeping the pavement clear of it. Because of this evident requirement, coupled with the fact that the loaded drag was attached to it, the vehicle would not be driven at more than three or four miles an hour. It had been the custom of the men, during the time the excavating had been going on, to get upon the slowly moving truck when it reached the highway, one of them riding in the cab with the driver at times and the others standing on a runningboard. The jury could have found that this had become a common practice known to the owners and drivers of the trucks, particularly the defendants, the owner and driver of that here involved; also that it was part of the method of carrying on the work, since it appears to have been the duty of the laborers to the number necessary to accompany the trucks, and that no instructions had been given them that they must not get upon them.

On the day in question, it had been snowing and had turned to rain. Some slush had, it seems, accumulated on the highway which had become somewhat slippery. Defendant's truck had been loaded with dirt and a drag with rock thereon attached. The outfit was moved by the driver to the highway and had gone a distance of about seventy-five feet in the direction of the fill, when at least three of the men, including plaintiff, went from the embankment to the road for the purpose of getting on the truck. Whether he walked or ran was the subject of varying testimony at the trial. As he reached for the handle on the door of the cab, according to his statement, of which there was some corroboration, the truck gave a sudden and unusual jerk, throwing him off. He fell to the pavement and rolled partly under the vehicle, the right rear wheel of which went over the middle of his body, fracturing his left leg, "splitting" his pelvis and causing other internal and external injuries. When picked up, his body was against or wedged under the front of the drag. Considering the injuries, the pain and suffering, the length of time he was incapacitated, his loss of earnings, and the medical, surgical and hospital expenses, the award of $11,000 by the jury was not regarded as so excessive as to call for any special argument under the rule to show cause, and the court does not find that it is so clearly excessive as to require reduction or the direction of a new trial on that ground.

Three points were stressed, however, on the argument for a new trial: First, that plaintiff in getting on the truck on prior occasions, and his attempt to do so at the time of the accident, was a mere licensee to whom the driver owed no duty other than to refrain from any act of willful negligence, of which there was neither claim nor evidence; second, the claim that there had been a sudden and unusual jerking of the truck causing him to fall was not shown or supported by any credible evidence; and, third, that the accident, as disclosed by the greater weight of the evidence, was due to plaintiff slipping as he attempted to get on the moving truck, and was entirely disassociated from any fault on the part of the driver who was not shown to have had any knowledge of the presence of plaintiff at the side of the truck at the time.

Point No. 1, it seems, is controlled by the rule followed in *Cleaves* v. *Yeskel*, 102 *N. J. L.* 621; 133 *Atl. Rep.* 393, in which a factual situation similar in some respects to that here considered appeared. The jury could have found, consequently, that plaintiff's relation to defendant's truck was something more than that of a licensee; also that the driver as well as the owner were charged with knowledge that the men were accustomed to get upon the moving truck, in order to go along and assist in replacing dirt or rock that might fall upon the pavement and to unload at the fill; likewise that this had become the settled practice and procedure with the assent and allowance of defendants in order to facilitate the performance of the work in hand. They accordingly owed plaintiff the duty of exercising ordinary and reasonable care in the operation of the truck at a time when he was on it or about to get upon it, to the end that he should not be injured by reason of the driver's negligent disregard of such duty.

Since the jury appears to have found the existence of such a duty, under the evidence, points two and three relate also to controversial questions of fact which were subject to its determination. The testimony as to whether the truck gave a sudden and unusual jerk while plaintiff was getting on, due to its negligent operation by the driver, and so threw him off, or whether there was no such jerk and he slipped and fell through no fault of the driver, including plaintiff's alleged admissions and statements after the accident, was contradictory in its nature. But there was testimony in the case, which, if the jury believed, as it apparently did, would give support to the verdict, and the court is quite unable to say, in the circumstances, that it was so manifestly the result of mistake, passion, prejudice or partiality as to justify disturbing it. The verdict is accordingly deemed subject to the rule indicated in *Boesch* v. *Kick, supra,* and the rule to show cause will be discharged.