David GRAY and Victor Colicchio,
Plaintiffs–Appellees,

v.

GREAT AMERICAN RECREATION AS-.
SOCIATION, INC., doing business as
Great Gorge Resort Action Park, and
Vernon Valley Recreation Association,
Inc., Defendants–Appellants.

No. 1010, Docket 91–9018.

United States Court of Appeals,
Second Circuit.

Argued Feb. 20, 1992.

Decided July 23, 1992.

Thomas O'Connor, Plainview, N.Y. (Craig R. Olsen, Brody, Olsen, Wolkofsky & Brody, of counsel), for defendants-appellants.

Donald E. Cameron, New York City, for plaintiffs-appellees.

Before: VAN GRAAFEILAND, KEARSE and MAHONEY, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Great American Recreation Association, Inc. and its subsidiary, Vernon Valley Recreation Association, Inc. (hereafter "Great American"), appeal from a judgment of the United States District Court for the Southern District of New York, which followed a jury trial before Judge Griesa. David Gray and Victor Colicchio each were awarded $15,000 on their claims for assault, and Colicchio was awarded an additional $800 on his claim for conversion of his property. We vacate the judgment and remand the case to the district court for retrial.

Great American operates an amusement park in Vernon, New Jersey known as Action Park. On August 3, 1989, Colicchio and his wife, together with Gray and a female companion, visited Action Park. Because many of the Park attractions are water rides, it has what Mrs. Colicchio described as "rows and rows" of coin lockers in which patrons may check their non-swimwear and other articles not suitable for water exposure. The four visitors placed all of their property of this nature in locker number 2142, which they locked with the key provided. When they returned after about an hour, they found that the locker had been broken into and their property was missing.

Plaintiffs were informed by one or more of the guards that, because the lock on their locker had been broken, their belongings had been removed for safekeeping. They subsequently were informed that their property could be found at the Park's courtesy desk. However, when they asked the woman attendant at the courtesy desk whether their property was there, she said that nothing had been turned in. Because Gray believed that he saw plaintiffs' property behind the courtesy desk counter, he attempted to get at it by going through a latched gate or door into the restricted area behind the counter. He was prevented from so doing by a Park attendant, and apparently a brief scuffle took place involving the two plaintiffs and two attendants, which caused no injury of moment to anyone. With the exception of money and jewelry, which apparently had been stolen, plaintiffs' property was in fact behind the counter and was returned to plaintiffs.

The trial was a short one, lasting less than two days. However, it started off on the wrong foot and never recovered. Although Gray knew that the trial was to begin on a Wednesday morning, he left New York and flew to Florida on Tuesday night. No reason was given for his departure. In the words of the district judge, "he just decided to go." Over defendants' objection, the trial proceeded in the absence of Gray, who was represented by the same attorney as was Colicchio. Under the circumstances, the defendants were entitled to a charge that the jury might draw an adverse inference against Gray. " 'The law creates a presumption, where the burden is on a party to prove a material fact peculiarly within his knowledge and he fails without excuse to testify, that his testimony, if introduced, would be adverse to his interests.' " *Meier v. CIR*, 199 F.2d 392, 396 (8th Cir.1952) (quoting 20 Am.Jur., *Evidence* § 190, page 193). " 'The nonappearance of a litigant at the trial or his failure to testify as to facts material to his case and as to which he has especially full knowledge creates an inference that he refrained from appearing or testifying because the truth, if made to appear, would not aid his contention.' " *United States v. Fields*, 102 F.2d 535, 537–38 (8th Cir.1939) (quoting 22 C.J. Section 57, p. 121). See also *N. Sims Organ & Co. v. SEC*, 293 F.2d 78, 80–81 (2d Cir.1961), *cert. denied*, 368 U.S. 968, 82 S.Ct. 440, 7 L.Ed.2d 396 (1962).

█ There was a clear question of fact as to whether Gray had been assaulted. Great American's Security Chief, who was present at the scene, testified that there was no physical contact between Gray and a Great American employee. Obviously, Gray was in the best position to testify as to what actually occurred. Certainly, he was in the best position to testify concerning the effects, if any, of the alleged assault. Indeed, the writer's panel colleagues would limit application of the unfavorable inference to Gray's claim of injury.

Instead of instructing the jury that it might draw an unfavorable inference from Gray's absence, the district judge charged in effect that the jury could not do so. He first told the jurors that Gray had no legal duty to be in court and that was "not anything you, the jury, has to worry about." He subsequently charged that if the jury believed there was something wrong about Gray's absence that would indicate to them that there might be some reason for his failure to testify, they could consider that. He then continued:

> But don't speculate. Don't go back to the jury room and speculate about things that aren't presented to you.

> Basically, you should deal with the case on the basis of the evidence presented. In certain situations you can draw an inference from somebody not appearing, but if the jury gets into that, often they get into speculating. And the safest, bedrock rule is you decide the case on the basis of the evidence that was presented to you, and then if you say that evidence is sufficient to make out the plaintiff's case, he wins. If not, he doesn't.

We do not believe that the foregoing instructions constitute plain error which mandates reversal in the absence of objection. However, we believe that the jury was misinformed concerning the treatment a plaintiff should expect who comes to federal court alleging wrongdoing and damages and cavalierly ignores his duty to prove them. In any event, other egregious error, duly excepted to, mandates reversal.

■ With certain limited exceptions, an employer is liable for the acts of his employee only when the acts are within the scope of the latter's employment. New Jersey has adopted the *Restatement (Second) of Agency* definition of scope of employment, which states in part that the conduct of a servant is not within the scope of employment "if it is different in kind from that authorized ... or too little actuated by a purpose to serve the master." *Id.* § 228; *see Di Cosala v. Kay*, 91 N.J. 159, 169, 450 A.2d 508 (1982). These, say the New Jersey courts, are questions of

fact to be decided by the jury. The court may decide whether a plaintiff has introduced sufficient evidence to make a question of fact; it may not, however, answer that question. As stated in *Cleaves v. Yeskel*, 102 N.J.L. 621, 624, 133 A. 393 (N.J.1926):

> Whether the act was or was not such as might reasonably be held to be within the employment's scope is ordinarily one of fact for the jury's determination, excepting where the departure from the master's business is of a marked and decided character when the question may be within the province of the court to determine.

This statement of New Jersey law mirrors the approach taken by the *Restatement (Second) of Agency:*

> The question of whether or not the act done is so different from the act authorized that it is not within the scope of the employment is decided by the court if the answer is clearly indicated; otherwise, it is decided by the jury.

*Id.* § 228 cmt. d.

The district court refused to submit the issue of scope of employment to the jury and would not permit defense counsel to even discuss it in his summation. The court merely defined conversion and assault and asked the jury to decide, by answering specific interrogatories, whether these offenses had been committed by one or more Great American employees. When the jury answered the interrogatories in the affirmative, the district court held as a matter of law that Great American was liable. This was error.

■ On the conversion claim, the district court itself recognized that it had gone awry when, on the argument of the motion to set aside the verdict, it said: "No one contends that such a conversion would be within the scope of an employment." The district court's decision that it nonetheless could hold Great American liable as a matter of law on the ground that it owed plaintiffs a non-delegable duty to protect their property or, alternatively, that it aided in the theft of the property by supplying some of its security guards with master

keys, merits little discussion. That was not the theory of liability on which the case was submitted to the jury. Moreover, Great American was neither an innkeeper nor a common carrier. *See Roth v. First Nat'l State Bank,* 169 N.J.Super. 280, 286–87, 404 A.2d 1182 (App.Div.), *certif. denied,* 81 N.J. 338, 407 A.2d 1212 (1979); *cf. De Wolf v. Ford,* 193 N.Y. 397, 406–09, 86 N.E. 527 (1908); *Gillespie v. Brooklyn Heights R.R. Co.,* 178 N.Y. 347, 352–59, 70 N.E. 857 (1904). Neither was it a bailee of the contents of the thousands of lockers it provided for its customers' use. The district court clearly erred in stating that the "undisputed facts are that the locker was opened by means of [a] master key" in the possession of defendants' security guards. The proof actually was that the lock's cylinder had been pulled and that a security guard said that the lock had been broken. We think it safe to say that an experienced thief would have little trouble in accomplishing entry into an ordinary metal locker in this fashion, and it is far from clear that this is not what occurred in the instant case. Finally, we take it as a given that master keys are an absolute necessity for any place of public assembly where lockers are furnished for public use.

■ The district court also erred in holding as a matter of law that the assault was within the scope of employment of Great American employees. In reaching this conclusion, the district court obviously felt that the alleged conversion and the alleged assault should be compartmentalized and the latter considered separate and distinct from the former. Perhaps the jury could have treated the two incidents in this manner. It was not for the court to do so as a matter of law. Plaintiffs alleged in their complaint that they were assaulted while they were attempting to retrieve their converted belongings. In his opening to the jury, plaintiffs' counsel described the loss of his clients' possessions from the open locker and stated that plaintiffs "in the course of their attempts to resolve the situation with park personnel" were assaulted. It cannot be said with certainty that there was no connection between the alleged conversion and the alleged assault. It would

not have been illogical for the jury to have concluded that the latter followed directly from the former. Whether Great American was legally responsible for what occurred should not have been decided as a matter of law.

In *Holler v. Ross,* 68 N.J.L. 324, 53 A. 472, 474 (N.J.1902), a case similar in many respects to the instant one, the court said:

> For a willful act done by a servant, not within the line of his employment, and about which there is not a doubtful question of fact as to whether the act of the servant was or was not within the line of his duty, the court should control the case, and nonsuit or direct a verdict for the defendant. Whether there be evidence which raises a question to go to the jury, as to whether the act of the servant was within the line of his duty and employment, is for the court. If the court so determines, then it is a question for the jury whether, under the proof, the act was or was not within the line of the servant's duty or employment.

This clear-cut statement of traditional New Jersey law was a guidepost that the district court should have followed.

■ We cannot conclude our discussion of reasons for reversal without commenting briefly on the district court's charge relating to damages. Because there were no physical injuries or special damages, the district court addressed its comments to the "invasion" of plaintiffs' rights. In describing the value of this "invasion of rights", the district court said:

> It is not a matter of a nominal thing. It is not a matter of a dollar, nominal damages, or $10 nominal damages. It wouldn't be sensible to make it a million dollars. There are things that are so clearly out of bounds one way or the other, if you find that there was an assault, you don't want to trivialize it and have your verdict be so low that it would be a laughing stock. You want to take into account what is regarded as a serious amount of money in these times of our economy and what money means.

By the same token, you wouldn't want to have it so high that it would be out of bounds and unfair to the defendant.

If there is any question why plaintiffs, particularly plaintiff Gray who did not even appear, were awarded $15,000 in damages, the answer lies in the above-quoted charge.

For all the above reasons, the judgment of the district court is vacated, and the matter is remanded to that court for re-trial.

KEARSE, Circuit Judge, concurring:

I am in agreement with much of the majority opinion and believe the judgment must be vacated and the matter remanded for a new trial principally because the jury was erroneously instructed that it could not award nominal damages. *See, e.g., Samoilov v. Raz,* 222 N.J.Super. 108, 113, 536 A.2d 275 (1987) (where actual damages resulting from assault or battery are not proven, nominal damages may be awarded); *see also Perna v. Pirozzi,* 92 N.J. 446, 460, 457 A.2d 431 (1983).

I am not persuaded, however, that the court erred in ruling that the alleged assaults were within the scope of employment as a matter of law. As the majority opinion indicates, New Jersey courts have adopted the *Restatement (Second) of Agency,* which states that "[t]he question of whether or not the act done is so different from the act authorized that it is not within the scope of the employment is decided by the court if the answer is clearly indicated." *Restatement (Second) of Agency* § 228 comment *d* (1958). *See also Printing–Mart Morristown v. Sharp Electronics Corp.,* 116 N.J. 739, 771, 563 A.2d 31 (1989) (per curiam) (citing the *Restatement* with approval). Here, there is no question that whatever assault took place occurred when plaintiffs tried to enter a secured area. I find it difficult to believe that physical prevention of such conduct is not clearly within the scope of the employment of persons who are security guards.